UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BEST GRAPHICS, INC.,

        Plaintiff,

                                            Case No. 20-cv-1686-pp

  v.

BINDERY 1, INC.,

        Defendant.

**ORDER GRANTING DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT (DKT. NO. 117) AND GRANTING IN PART PLAINTIFF'S MOTION FOR FEES AND COSTS (DKT. NO. 113)**

On June 7, 2024, a jury found that both parties had breached the same contract. The jury awarded the plaintiff $218,500 and the defendant $50,000. Dkt. No. 106. The court entered judgment on June 11, 2024. Dkt. No. 108. The plaintiff has filed a motion for fees and costs in the amount of $256,242.26, relying on two separate provisions of the Terms and Conditions in the parties' Machinery Contract. Dkt. No. 113. On July 5, 2024, the defendant filed a motion to alter judgment or for relief from judgment, arguing that the court, rather than the jury, should have decided whether to award prejudgment interest. Dkt. No. 117. The court will first address the defendant's motion to alter judgment, then turn to the plaintiff's request for fees and costs.

1

# I. Defendant's Motion to Alter Judgment or for Relief from Judgment (Dkt. No. 117)

### A. Defendant's Motion

The defendant asks the court to correct a manifest error of law under Rule 59(e) resulting from the jury's award of prejudgment interest to the plaintiff. Dkt. No. 118 at 1. The defendant argues that the court instructed the jury on how to make determinations regarding the parties' competing breach of contract claims and how to interpret disputed language but did not instruct the jury on how or whether to apply any interest rate included in the contract. Id. at 1-2. It asserts that the interest provision in Section 4 of the Machinery Contract provides that "[i]nvoices shall bear interest at a rate of one and one-half percent (1-1/2%) per month from the due date or the highest amount allowed by applicable law, which[ever] is less." Id. at 2. The defendant recounts that the jury awarded $218,500; it insists that that amount "clearly was the mathematical calculation of applying 18% interest over 5 years to the entire unpaid balance on the Machinery Contract—$115,000—which was the only loss [the plaintiff] asserted at trial." Id.

The defendant argues that under Wisconsin law, "the determination of prejudgment interest is a question of law and [it is] error to submit this issue to the jury." Id. at 3 (citing Murray v. Holiday Rambler, Inc., 83 Wis. 2d 406, 438 (Wis. 1978); see also Beacon Bowl, Inc. v. Wis. Electric Power Co., 176 Wis. 2d 740, 776 (Wis. 1993)). It says that a plaintiff may recover only the amounts that are fixed or readily determinable. Id. (citing Cal. Wine Assoc. v. Wis. Liquor Co. of Oshkosh, 20 Wis. 2d 110, 132 (Wis. 1963)).

2

The defendant argues that it withheld the remaining invoice balance of $115,000 "based on its genuinely-held assertions" that the plaintiff had breached the contract by failing to fully install the Vento machine and because the machine itself was defective. Id. at 3. It argues that the jury agreed that the plaintiff breached the contract and awarded the defendant $50,000. Id. The defendant cites Wisconsin authority holding that "[a]s long as there is a genuine dispute about the amount that is due, [the party owing interest] should not have to pay interest until the amount has been determined and judgment entered thereon." Congress Bar and Rest. Inc. v. Transamerica Ins. Co., 42 Wis. 3d 56, 71 (Wis. 1969); see also Stevens Construction Co. v. Carolina Corp., 63 Wis. 2d 342, 359 (Wis. 1974).

The defendant argues that because both parties breached the contract, the amount due could not be ascertained until trial. Id. at 4. It asks the court to reduce the amount awarded to $115,000 (the amount due on the invoice without prejudgment interest).

    B.    Plaintiff's Opposition (Dkt. No. 120)

The plaintiff opposes the motion, asserting that Section 4 of the Machinery Contract expressly authorized the award of interest at the rate of 1.5% per month for sixty months (for a total of $103,500). Dkt. No. 120 at 2. The plaintiff contends that because the interest was based on the contract and not on common law, the case law the defendant cited does not apply. Id. at 1. The plaintiff argues that the defendant's recovery on the counterclaim is entirely separate from the plaintiff's breach of contract claim. Id. It maintains

3

that the verdict reflects the jury's finding that the Vento machine was fully installed as of April 2019, triggering the interest due under the contract. Id. The plaintiff reasons that the jury's separate finding that the plaintiff breached the contract should have no impact on the plaintiff's damages. Id.

The plaintiff recounts that the contract states that "[i]nvoices *shall* bear interest at a rate of one and one-half percent (1-1/2%) per month . . . ." Id. at 2 (emphasis in the plaintiff's brief). Based on this language, the plaintiff says that the jury had the authority to award interest as an item of contractual damages. Id. at 2 (citing Wis JI-Civil 3735; Klug & Smith Co. v Sommer, 83 Wis. 2d 378, 382, (Wis. 1978)). The plaintiff argues that the defendant waived any objection to the award of prejudgment interest by failing to object to the request for interests and fees the plaintiff says it made in the pretrial report. Id. at n.1. The plaintiff asserts that to the extent the court finds that the defendant did not waive its objection to prejudgment interest, the authorities cited by the defendant involved common law prejudgment interest awards rather than interest due under a contract. Id. at 2-3. According to the plaintiff, courts have upheld jury verdicts that included interest in the damage computations. Id. at 3 (citing Brogan v. Industrial Cas. Ins. Co., 132 Wis. 3d 229, 239, 241 (Wis. Ct. App. 1986)).

The plaintiff maintains that there never was a dispute about the amount that was unpaid under the contract: the parties simply disputed whether the amount was due and, if so, when. Id. at 4. The plaintiff argues that the defendant's recovery does not negate the plaintiff's right to recover interest

4

because the contract does not say that interest will be reduced by any claims that might be brought by the defendant. Id. at 5. It cites Cal. Wine Assoc., 20 Wis. 2d at 132, for its holding that "[t]he existence of a setoff, counterclaim, or cross claim, although itself unliquidated, will not prevent recovery of interest on the balance of the demand found due from the time it became due." Id. The plaintiff speculates that the "relatively small award to [the defendant] more likely reflects a discrete finding related to the machine's two inoperable cameras or the lay flat issue, neither of which conflicted with the jury's award of [the plaintiff's] full damages and contractual interest for the unpaid invoices." Id. at 6.

C.     Defendant's Reply (Dkt. No. 123)

The defendant cites three cases in reply:

1) Under Wisconsin law, "the determination of prejudgment interest is a question of law and [it is] error to submit this issue to the jury." *Murray v. Holiday Rambler, Inc.*, 83 Wis. 2d 406, 438 (1978)

2) In order to recover prejudgment interest on a contract claim, "the amount claimed must be fixed or readily determinable." *California Wine Assoc. v. Wisconsin Liquor Co. of Oshkosh*, 20 Wis. 2d 110, 132 (1963); and

3) "The jury's determination that both [the plaintiff] and [the defendant] breached the Machinery Contract, and awarding damages to [the defendant] in the amount of 43.5% [of] [the plaintiff's] breach of contract claim, demonstrated that [the plaintiff's] claim for the remaining balance owed on the Machinery Contract was not fixed readily determinable until the matter was resolved by trial. *Congress Bar and Restaurant, Inc. v Transamerica Ins. Co.*, 42 Wis. 2d 56, 71 (1969).

Dkt. No. 123 at 1.

5

The defendant first observes that the plaintiff cited no authority supporting its assertion that the language of the contract means that the *jury*—as opposed to the court—determines interest as a matter of contractual damages. Id. at 2. The defendant says that the plaintiff fails to recognize that its own claim is a common law contract claim rather than a right founded in a statute, regulation or rule. Id. at 3. The defendant asserts that the contract language provides that "*invoices* shall bear interest . . ." but "does not explicitly provide for interest where there is a genuinely disputed legitimate claim that amounts are not due" under the contract because of the plaintiff's breach of that contract. Id. at 4 (emphasis in original).

The defendant distinguishes Klug & Smith, 83 Wis. 2d 381, in which the customer held back $102,000 because the builder did not substantially complete the contract. Id. The defendant contends that in Klug, the parties entered into a new agreement to resolve their dispute and the new agreement contained an interest provision relating to the funds that were held back. Id. It says that the trial court determined that the subsequent agreement specifically addressed the disputed held back money. Id. The defendant argues that here, in contrast, the Machinery Contract in this case applied an "inflated interest rate on past due invoices, as opposed to the default 'legal rate' of interest provided in Wisconsin statutes." Id.

The defendant identifies what it considers to be a flaw in the plaintiff's assertion that there never was a dispute about the amount that was unpaid on the contract. Id. at 5. The defendant says that the plaintiff's liability on the

6

Machinery Contract was sharply contested and that the jury found that the plaintiff had breached that same Machinery Contract, awarding the defendant 43.5% of the amount due on the unpaid invoice. Id. The defendant recounts that the evidence at trial established that the defendant had experienced significant problems with the machine through 2019 and beyond. Id. (citing Trial Exhibits 107, 109-11, 163, 218, 241). Id. It refers to the testimony of Brenda Campbell, Steve Sutton and Randy Hale, who testified that the Vento machine was not operating during most of 2019 and was operating on only a limited basis after that time. Id. The defendant says that the plaintiff merely speculates that the jury awarded the defendant damages for the cameras and lay flat issues, and says that even if that were true, the cameras were not replaced until January 2021—after the lawsuit was filed. Id. at 5-6. The defendant insists that as long as there was a genuine dispute about the amount owed, the defendant should not have to pay interest until the amount was determined and judgment entered. Id. at 6 (citing Congress Bar and Rest., 42 Wis. 2d at 71; Stevens Const., 63 Wis. 2d at 359 (declining to award prejudgment interest where the "plaintiff had the burden to prove substantial performance and no sum certain could be ascertained until trial")).

The defendant takes issue with the plaintiff's attempts to frame its counterclaim as an "unrelated breach." Id. at 7. The defendant points out that in Klug & Smith, the Wisconsin Supreme Court explained that "in a case where the builder's right to any sum due on the contract involves the determination of whether he had substantially performed, this court held that the amount of the

7

builder's claim was unascertainable and denied prejudgment interest." 83 Wis. 2d at 386-87 (citing <u>Stevens Const.</u>, 63 Wis. 2d at 359).

Finally, the defendant contends that it did not waive its objection to the jury's authority to decide whether the plaintiff was entitled to prejudgment interest. <u>Id.</u> at 8. It says that the "mere mention of the issue of interest in the Joint Pretrial Report, under the heading of 'Summary of Claims,'" did not suggest which issues were to be decided by the jury and which by the court. <u>Id.</u> at 8. The defendant says that "jury issues were separately addressed in proposed jury instructions and special verdict forms submitted to the Court" and that "these items were discussed multiple times among the parties and Court during pretrial and jury instruction conferences;" the defendant says that the plaintiff has not identified any document or hearing at which it told the defendant or the court that it would raise the issue with the jury. <u>Id.</u> The defendant also argues that under Wisconsin law an "objection to submission of prejudgment interest to the jury can be asserted for the first time after the verdict." <u>Id.</u> at 9 (citing <u>Murray</u>, 83 Wis. 2d at 437).

D.    <u>Analysis</u>

Federal Rule of Civil Procedure 59(e) allows a court to alter or amend a judgment if the party files the motion "no later than 28 days after the entry of the judgment." Under the rule, the movant must "demonstrate a manifest error of law or present newly discovered evidence." <u>Obriecht v. Raemisch</u>, 517 F.3d 489, 494 (7th Cir. 2008) (citing <u>Sigsworth v. City of Aurora</u>, 487 F.3d 506, 511-12 (7th Cir. 2007)). "A 'manifest error' is not demonstrated by the

8

disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" Oto v. Metro. Life Ins. Co., 224 F.3d 601, 606 (7th Cir. 2000) (quoting Sedrak v. Callahan, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)).

### 1. *Did the Jury Award Prejudgment Interest?*

The defendant's motion asks the court to "correct a manifest error of law by the jury awarding prejudgment interest to" the plaintiff. Dkt. No. 117 at 1. It asks the court to decline to award "prejudgment interest because the jury's verdict establishes that [the defendant] did not owe $115,000.00 for the final payment on the subject Machinery Contract." Id. It says that prejudgment interest could not have been awarded because the amount due under the Machinery Contract had not been determined until trial. Id. In the alternative, the defendant asks the court to recalculate the jury's award of damages to "apply any interest only to the net amount [the defendant] owed on the Machinery Contract." Id.

It is important to clarify that neither the parties nor the court know how the jury calculated the plaintiff's damage award of $218,500 (reflected at Dkt. No. 106 at 1). The verdict form asked the jury whether the defendant had breached the Machinery Contract. Id. It instructed the jury that if it decided that the defendant *had* breached the contract, it should answer the following question: "What is the amount of monetary loss, if any, suffered by Best Graphics as a result of the breach of the Machinery Contract?" Id. The jury answered "yes" to the question of whether the defendant had breached the

9

Machinery Contract, and in response to the question about the amount of monetary loss that resulted, the jury answered only, "$218,500." Id. It did not explain how it came up with that number (and the verdict form did not ask it to).

The *defendant* has attempted to reverse-engineer the math, coming to the conclusion that because the unpaid balance on the contract was $115,000, the jury must have applied an 18% interest rate to that amount over five years to come up with the $218,500 award. Dkt. No. 118 at 2. The *plaintiff* says that the defendant has "conceded" that the jury awarded the plaintiff "(a) the $115,000.00 unpaid contract balance under the invoices; and (b) $103,500.00 in interest, calculated at the monthly rate of $1.5% for 60 months, as § 4 of the Contract provides." Dkt. No. 120 at 2. Both parties are guessing. Again, the form of verdict did not ask the jury to explain how it came up with the amounts of damages it awarded—for a reason the court will explain below. So although it is a good guess that the additional $103,500 the jury awarded the plaintiff over and above the unpaid final invoice amount of $115,000 represents the jury's intention to award the plaintiff prejudgment interest, there is no way to know that with any certainty.

Citing Murray, 83 Wis. 2d at 438, the defendant argues that under Wisconsin law "[it is] error to submit" the issue of prejudgment interest to the jury. Dkt. No. 118 at 3. The *court* did not submit the issue of prejudgment interest to the jury, as it explains below. The *plaintiff*—without advising the defendant or the court that it intended to do so—asked the jury to award

10

prejudgment interest. Because the plaintiff made that request, and because the jury awarded the plaintiff more than the $115,000 unpaid balance of the contract, the court will assume—as the parties have—that any award over $115,000 was the jury's attempt to comply with the plaintiff's request and to calculate and award prejudgment interest.

<blockquote>2. <em>Did the Jury Have the Authority to Award Prejudgment Interest?</em></blockquote>

To the extent that the plaintiff asked the jury to award prejudgment interest, and to the extent that the jury may have done so, the court agrees with the defendant that the jury did not have the authority to determine whether the plaintiff was entitled to prejudgment interest. Whether a party is entitled to prejudgment interest is a question of law. <u>Soria v. Classic Custom Homes of Waunakee, Inc.</u>, 388 Wis. 2d 474 (Wis. Ct. App. 2019); <u>Murray</u>, 83 Wis. 2d at 438 ("We conclude that the determination of prejudgment interest is a question of law and that it was error to submit this issue to the jury."). The Wisconsin Supreme Court held in <u>Murray</u> that prejudgment interest is determinable as a matter of law by applying the legal rate set by statute to the liquidated claims and "was properly a function of the trial court"—not the jury. <u>Murray</u>, 83 Wis. 2d at 439.

The plaintiff asserts that <u>Murray</u> is irrelevant because it did not involve a contractual provision like the one in this case. In <u>Murray</u>, the plaintiffs sued to recover damages from the seller of, and to revoke acceptance of, a motorhome that had had problems from the day they took possession. <u>Id.</u> at 412-13. The special verdict form and corresponding instruction allowed the jury to "insert

11

such sum of money as you feel will fairly and reasonably compensate (the plaintiffs)" and advised the jury that the legal rate of interest was seven percent Id. at 437. That instruction was erroneous; the legal rate of interest actually was five percent. Id. The Wisconsin Supreme Court agreed that as a matter of law, the plaintiffs were entitled to prejudgment interest on their claim for contract interest in accordance with the general rule that such interest is available on a claim "which is liquidable, or fixed and determinate." Id. at 438 (citing Bigley v. Brandau, 57 Wis. 2d 198 (Wis. 1973)). But the court held that the determination of the legal rate "was properly a function of the trial court," and concluded that that issue should not have been submitted to the jury. Id. at 439. (The Machinery Contract in this case refers to "the highest amount [of interest] allowed by applicable law" but does not define that amount; the correct legal rate of interest (what the highest amount allowed by applicable law is) also was at issue in Murray.)

Citing Wisconsin Civil Jury Instruction 3735, the plaintiff argues that "the contractual interest provision means that the jury determines interest as an item of contractual damages." But Wis. JI Civil 3735 discusses damages/loss of expectation and says only that the "measure of damages for a breach of contract is the amount which will compensate the plaintiff for the loss suffered because of the breach." It does not mention interest. The plaintiff also cites to the Wisconsin Supreme Court's ruling in Klug & Smith, where the court affirmed an award of prejudgment interest. 83 Wis. 2d at 384. In Klug, the plaintiff entered into a contract to build a structure housing a skating rink

12

for the defendant. Id. at 381. When a dispute arose regarding whether the plaintiff had completed the construction, the parties entered into a new agreement that they felt resolved that dispute and awarded interest. Id. That new agreement didn't resolve the dispute and a jury awarded the plaintiff damages. Id. at 381-82. The Wisconsin Supreme Court held that "when the parties explicitly agree, either in their principal contract or in a supplementary stipulation or agreement, that damages will or will not include prejudgment interest, the parties will be held to that agreement, whether or not interest would be proper without such an agreement." Id. at 382. But the plaintiff here neglects to mention that it was the *court*—not the jury—that awarded the interest in that case. After the jury returned the verdict awarding damages for the plaintiff, the plaintiff asked for prejudgment interest as provided for in the new agreement. Id. The *trial court* ruled that the plaintiff was entitled to prejudgment interest. Id. Nothing in Klug & Smith supports the proposition that the *jury* should determine whether a party is entitled to prejudgment interest.

3. *Even If It Had Had the Authority to Award Prejudgment Interest, Was the Jury Able to Correctly Calculate Prejudgment Interest?*

Not only is it the *court*, not the jury, that decides whether prejudgment interest is appropriate, but in this case, there also was a practical problem with what appears to have been the jury's attempt to award prejudgment interest. It is not clear how the jury could have figured out how to correctly calculate the interest provided for in the contractual language. The language from Section 4

13

of the Machinery Contract authorized interest at the rate of "one and one-half percent (1-1/2%) per month from the due date *or the highest amount allowed by applicable law, whichever is less."* Dkt. No. 27-3 at 3, ¶4 (emphasis added). Neither party asked the court to instruct the jury on calculating interest. Neither party provided the court with information regarding the "highest amount allowed by applicable law," and neither party asked the court to instruct the jury on what that amount was. That means that the jury had no guidance on how to determine "the highest amount allowed by applicable law" or on how to determine whether that amount, or the 1.5% per month specified in the contract, was "less." Nor can the court or the parties know how the jury determined a "due date" at which interest started to accrue—perhaps it reached a decision on the date it believed the Vento machine to have been installed and used that date, but the court can only guess. So—even if the jury had the legal authority to decide whether the plaintiff was entitled to prejudgment interest, it did not have instructions, information or tools to help it correctly calculate the rate of interest required by the contract.

In a footnote in its opposition brief, the plaintiff asserts that it stated in the joint pretrial report that it was seeking to recover the balance of the purchase price of the Vento machine "as well as interest and fees pursuant to the terms of the contract," and that it asked the jury to award the contractual interest; it says that because the defendant did not object to that request, the defendant waived "any such objection." Dkt. No. 120 at 2 n.1. In support of its waiver argument, the plaintiff relies on <u>Wroblewski v. Exchange Ins. Ass'n of</u>

Chi., 273 F.2d 158, 161 (7th Cir. 1959), in which the court found that the plaintiff had waived an argument by not objecting to the form of a special verdict. But in *this* case, the record does not support a finding of waiver. Sections 4 and 10 of the Machinery Contract's Terms and Conditions—the sections that discuss payments (including interest) and indemnification—were not issues that the parties disputed in connection with the plaintiff's summary judgment motion. The joint pretrial report filed on December 22, 2023 states that the plaintiff "is seeking to recover $115,000, the total of the unpaid balance of the purchase price, as well as interest and fees pursuant to the terms of the contract," dkt. no. 56 at 1; the report does *not* say that the plaintiff is seeking *prejudgment* interest, or that the plaintiff planned to ask *the jury* to award interest. The plaintiff provided the court with proposed jury instructions, dkt. no. 63, but did not ask for an instruction regarding interest. The court instructed the jury on the breach of contract claim and on compensatory damages but did not instruct the jury that it could or should include interest. Dkt. No. 101. The form of verdict did not ask the jury whether it wished to award interest or in what amount. Dkt. No. 106. In short: the plaintiff *never* alerted the defendant—or the court—of its intent to ask the *jury* to award prejudgment interest.

4.    *Is the Plaintiff Entitled to Prejudgment Interest?*

So the jury did not have the authority to decide whether prejudgment interest was appropriate and if so, how much. That means that the court next must decide whether, given the facts, prejudgment interest is warranted by the

15

language of Section 4 of the Machinery Contact. Section 4 of the Machinery Contract states that invoices were "due and payable in net cash upon delivery." And, as discussed, it states that invoices bear interest "at the rate of one and one-half percent (1-1/2%) per month *from the due date* or the highest amount allowable by applicable law, whichever is less." Dkt. No. 27-3 at 3. As the court hinted in discussing the mystery of the jury's calculation method, this language begs the question—what was the "due date" upon which interest began to accrue?

The defendant filed a counterclaim under this same Machinery contract, disputing whether the plaintiff had properly delivered and installed the Vento machine. The parties disputed these facts—whether the machine was properly delivered and installed and if so, when—throughout the trial, a dispute that relates to the question of when payment was "due." The Wisconsin Supreme has held that, "as long as there is a genuine dispute about the amount that is due, the insurer should not have to pay interest until the amount has been determined and judgment entered." Congress Bar and Rest., 42 Wis. 2d at 71. The same court later explained that "one of the tests for determining whether the amount owing is ascertainable to the extent it would place liability for prejudgment interest on the withholding party, is whether the claim represents a 'genuine dispute.'" Klug & Smith, 83 Wis. 2d at 385 (quoting Dahl v. Housing Auth. of City of Madison, 54 Wis. 2d 22, 31 (Wis. 1972)). "Where the record shows no more than putting the plaintiff to his proof, prejudgment interest is appropriate . . . while a substantial variance between the amount prayed for

16

and the amount recovered is indicative of a genuine controversy and an unascertainable amount owed . . . ." Id. (citations omitted).

In this case, the defendant did more than "put the plaintiff to his proof." After the plaintiff filed its complaint alleging that the defendant had failed to pay the balance due under the Machinery Contract, dkt. no. 1-1 at 5, ¶¶6-11, the defendant responded with an answer and counterclaims, alleging that the plaintiff had breached the contract first and could not enforce it, dkt. no. 2 at ¶12. The defendant pled that it had demanded the plaintiff fully refund its money and pick up the machine if the plaintiff did not get the machine fully installed and operating. Id. at ¶13. Among its counterclaims, the defendant pled a breach of contract claim alleging that the "plaintiff ha[d] failed to perform the contract, including by failing to provide and install machinery that produces commercially acceptable work or performs as provided in the Machinery Contract, and failing to refund [the defendant's] payments on the Machinery Contract following [the defendant's] refund demand." Id. at ¶36. The defendant further alleged that "[a]s a result of Plaintiff's failure to perform under the Machinery Contract, [the defendant] has suffered damages, including actual damages and other damages relating to the ongoing inability to productively utilize its facility or acquire replacement machinery due to the non-function machinery taking up space in its facility and non-payment of the refund that would enable [the defendant] to purchase replacement machinery." Id. at ¶37.

Although the *plaintiff* asserted that "installation" of the Vento machine occurred in February of 2019, the *defendant* insisted that the plaintiff never properly installed the machine and that the plaintiff refused to provide a refund to the defendant despite its demand. The uncertainty surrounding the amount due—and when it was due—became apparent at the summary judgment stage, when the court could not find, as a matter of law, that the Vento machine had been "installed" by any particular date. Dkt. No. 46. Despite the plaintiff's assertions that the math was straightforward (the defendant had paid $560,000 on a $675,000 contract, so the defendant owed the $115,000 balance), the court found the contract anything but straightforward. For example, it found that the contract did not define "installed" or "installation." Id. It found that the contract purported to sell the Vento machine "as is" but simultaneously provided a Seller's Warranty for twelve months' parts and labor. Id. It found that the contract included a "6 Months Assurance" and buyback provision. Id. The court concluded that to declare the full amount due and owing in February of 2019, it would be required to ignore other language in the contract and the evidence that the defendant had demanded that plaintiff provide a full refund if it could not get the machine to work, and that the defendant's lawyers wrote to the plaintiff in October of 2019 and May of 2020 demonstrating that the defendant continued to have problems with the machine. Id.

The uncertainty continued throughout the trial, with the parties vigorously disputing whether and when the Vento machine was installed. The

form of verdict asked the jury to decide whether the plaintiff (dkt. no. 106 at 2) and the defendant (dkt. no. 106 at 1) each had breached the Machinery Contract, and if so, to determine the amount of monetary loss caused by either or both breaches. The court instructed the jury that "[e]ach party has claimed that the other party breached the contract. A party to a contract breaches it when performance of a duty under the contract is due and the party fails to perform. Failing to perform a duty under the contract includes defectively performing as well as not performing at all." Dkt. No. 101 at 19. The court identified the ambiguous language in the contract: "[w]hat 'installation' of the Vento Perfect Binder means" and "[w]hat it means for the Vento Perfect Binder to 'produce commercially acceptable work.'" Id. at 22. The court defined consequential damages for breach of contract and loss of expectation (but, as discussed, did not mention or instruct on interest). Id. at 25, 26. The court instructed the jury that that "[f]ailing to perform a duty under the contract includes defectively performing it as well as not performing at all." Id. at 19.

This record demonstrates that the "due date"—the date on which "delivery" of the Vento machine occurred—was in dispute until the jury returned its verdict (and even then, the verdict did not specify what the jury had decided the "due date" was). That means that *no* prejudgment interest is warranted.

The plaintiff disagrees, returning to the decision in Klug & Smith to support its argument that its counterclaim "does not in itself affect the value of the damages being withheld from the injured party but merely results in the

mathematical crediting of one independent claim against a competing independent claim after each has been fully established to the satisfaction of the court." 83 Wis. 2d at 382. Again, the facts of Klug are distinguishable from those in this case. The parties tried to resolve their contractual dispute with a new agreement that provided for interest but they ended up having to put the new agreement before a jury. Id. at 381. That jury was asked what sum of money would reasonably and fairly compensate the plaintiff for the construction work done for which the plaintiff had not been paid. Id. at 387. The defendant did not argue the affirmative defense of lack of substantial *performance*; it argued the affirmative defense of lack of substantial *completion*. Id. The Wisconsin Supreme Court explained that the result would have been different had the plaintiff's right to any sum due involved a determination of whether the plaintiff had substantially performed under the contract, because then the claim would be unascertainable and the court would deny prejudgment interest. Id. at 386-87 (citing Stevens Const., 63 Wis. 2d 342). In contrast, in *this* case, one of the questions was whether the defendant ever "delivered" the Vento at all (if "delivery" including ensuring that the machine was fully installed and functional).

In summary: Under Wisconsin law, the question of whether a party is entitled to prejudgment interest is a question of law for the court—not the jury—to decide. The record shows that the date of "delivery" of the Vento machine (which the contract identifies as the "due date" for invoices and to which the contract ties the accrual of interest) was vigorously disputed until

20

the return of the verdict. That means that the plaintiff is not entitled to prejudgment interest. The court will grant the defendant's motion and will vacate the jury's award of any amount over $115,000 (the balance due on the contract).

Under the contract, the plaintiff is entitled to post-judgment interest. The plaintiff implicitly asserts that it was entitled to $103,500 in prejudgment interest ($103,500 being the amount the jury awarded over and above the $115,000 invoice amount). Dkt. No. 120 at 2. Where did the plaintiff get that $103,500 amount? Presumably by doing what the parties assume that the jury did—calculating simple interest at the Section 4 contract rate of 1.5% per month over the sixty months from the date the plaintiff says the Vento was installed to the date of trial. Presumably, then, the plaintiff also believes that the court should award it simple interest at the rate of 1.5% per month in *post*-judgment interest for the eight months since the jury returned its verdict. But that assumes that the 1.5% per month rate is the rate required by the contract. Again, Section 4 states that invoices bear an interest rate of "one and one-half percent (1-1/2%) per month from the due date *or the highest amount allowed by applicable law, whichever is less.*" The "highest amount allowed by applicable law"—in this case, Wisconsin law—is "$5 upon the $100 for one year," or simple interest calculated at 5% per year. Wis. Stat. §138.04. To determine the applicable interest rate for post-judgment interest, the court must determine which is less—the 1.5% per month contractual interest rate or the 5% per year statutory interest rate.

21

Calculating simple interest at 1.5% per month on the $115,000 invoice for the nine months since the verdict results in $15,525 in accrued interest. Calculating simple interest at 5% per year on the $115,000 invoice for the nine months since the verdict results in $4,312.50 in accrued interest. So the statutory interest rate of 5% per year is less than the contractual interest rate of 1.5% per month and, under the contract, is the rate that applies. The plaintiff is entitled to simple interest on the $115,000 invoice amount at the rate of 5% per year from the date of the jury verdict (June 7, 2024).

## II. Plaintiff's Motion for Attorneys' Fees and Costs (Dkt. No. 113)

### A. Plaintiff's Motion

Acknowledging that Wisconsin follows the American Rule limiting fees to those allowed by contract or statute, the plaintiff seeks costs under two, separate fee shifting provisions in the Machinery Contract. Dkt. No. 113 at 3. Section 4 of the Terms and Conditions at page 3 of the Contract provides:

> **4. Prices, Payments and Default**. . . . Purchaser shall be responsible for and shall remit to seller all costs, expenses and reasonable attorney fees incurred by seller in obtaining payment of any invoice of portion thereof, or in enforcing its rights under this contract.

Section 10 of the Terms and Conditions states:

> **10. Indemnification**. Purchaser shall indemnify Seller against any and all losses, liabilities, damages and expenses (including without limitation, attorneys' fees and other costs of defending any action) which Seller may incur as a result of any claim by Purchaser or others arising out of or in connection with the Machinery, including as a result of the installation or operation of the Machinery, and defects not proven to have been caused solely by Seller's negligence.

Id.

22

Not only does the plaintiff seek costs, expenses and fees on its own breach of contract claim, but it also seeks fees it says it incurred from defending against the defendant's counterclaim. Conceding that it is difficult to apportion the costs between bringing its own breach of contract claim and defending against the defendant's counterclaim, the plaintiff requests the following:

| | |
|---|---|
| Pretrial Fees | $166,188.50 |
| Summary Judgment | 28,030.50 |
| Trial Fees | 46,098.00 |
| Expenses | 15,925.26 |
| Total | $256,242.26 |

Dkt. No. 114. The plaintiff separately applied for a bill of costs in the amount of $9,250.45; it admits that if the clerk awards that amount, it should be deducted from the expenses requested in this motion. Dkt. No. 113 at 2.

Anticipating an objection from the defendant, the plaintiff discusses whether the court should reduce any award of fees and costs to the plaintiff because the jury found in favor of the defendant on its breach of contract counterclaim. Id. at 5. The plaintiff acknowledges that in Wisconsin,

> the general rule is that where reasonable attorney's fees or some designated percentage is provided for in the note, and the plaintiff recovers on the note and the defendant recovers on the counterclaim, the amount recoverable for attorney's fees is reduced in proportion to the amount recovered on the note less the amount recovered on the counterclaim.

Id. at 6 (quoting Borchardt v. Wilk, 156 Wis. 2d 420, 428 (Wis. Ct. App. 1990)). The plaintiff attempts to distinguish Borchardt, asserting that Section 4 of the Machinery Contract contains no prevailing party language or other language limiting the right to recovery. Id. Nor, the plaintiff argues, does the contract

23

contain corollary language allowing the defendant to recover fees if it succeeds on a contract claim against the plaintiff. Id. The plaintiff reasons that because the defendant succeeded on only one of its counterclaims, a directly proportional reduction in fees is not warranted. Id. at 7.

The plaintiff suggests that if the court determines the defendant's recovery on its counterclaim warrants an adjustment in the plaintiff's award of fees, there are two ways the court could calculate the plaintiff's award. It argues that the court could discount the amount the jury awarded the plaintiff ($218,500) by the amount it awarded to the defendant ($50,000) (which would result in $168,500) and award the plaintiff 77.1% of its fees and costs ($168,500 ÷ $218,500). Id. Alternatively, it notes that the jury awarded the defendant $50,000. Id. The plaintiff cites a case it calls "Shelley v. Lloyds of London," (the name of the case is _Shadley_ v. Lloyds of London) 322 Wis. 2d 189, 202 (Wis. Ct. App. 2009), followed by this parenthetical: "successful plaintiff's fee award reduced to percentage of amount recovered divided by amount demanded." Id.[1] The plaintiff does not provide the court with a

---

[1] Shadley involved an ambiguous contract provision which provided for attorneys' fees to be awarded to the "successful" party and against the "unsuccessful" party without defining those terms. The trial court had found in the plaintiff's favor on some issues and against her on others but had deemed the plaintiff the "successful" party and awarded fees in her favor against the defendants. The Wisconsin Court of Appeals found that "interpreting the contract provision to entitle a plaintiff to the entirety of her attorney fees, even when the plaintiff is only nominally successful, would encourage a plaintiff to bring excessive and unsubstantiated claims, so long as at least one claim is legitimate." Shadley, 322 Wis.2d at 201-02. The court concluded that "[a] more rational reading of the [contractual] provision would grant [the plaintiff] that proportion of her attorney fees that equate to her success at trial." Id. at 202. It remanded to the trial court to "determine the total amount of damages [the

24

numerical calculation applying this second approach, but it advises that the second approach "is the better approach." Id.

The plaintiff asserts that it was "100% successful on its breach of contract claim, which required it to also defeat [the defendant's] substantive defenses." Id. It says that in contrast, the defendant recovered only 8.9% of the amount it sought on its breach of contract counterclaim, and that the defendant lost its Wis. Stat. §100.18 counterclaim for which it was seeking $733,000. Id. It calculates that the jury's $50,000 award to the defendant is only 6.8% of that amount. Id. The plaintiff concludes that any adjustment for the defendant's "limited success on the breach of contract counterclaim should be no more than 5.0%," without explaining the source of the 5%. Id. at 8.

B.    Defendant's Response (Dkt. No. 119)

The defendant opposes the motion, asking the court to reject the plaintiff's request or otherwise proportionally reduce the plaintiff's fee claim to reflect that the jury awarded the defendant $50,000—or 43.5%—of the plaintiff's breach of contract claim. Dkt. No. 119 at 1. The defendant argues that under the American Rule, the court should "not award recovery of attorney's fees pursuant to a contract unless the 'provision clearly and unambiguously so provides.'" Id. at 4 (quoting Westhaven Assoc. Ltd. v. C.C. of Madison, Inc., 257 Wis. 2d 789, 798 (Wis. Ct. App. 2002)). According to the

---

plaintiff] sought to recover and calculate the percentage of that total on which she was successful, i.e., the amount [the plaintiff] actually recovered divided by the total amount of damages she sought to recover." Id.

defendant, the contract provisions in this case are not clear and unambiguous. Id.

The defendant points out that Section 4 limits recovery of attorneys' fees to those "incurred by [the plaintiff] in obtaining payment of any invoice or portion thereof, or in enforcing its rights under this contract." Id. It observes that Section 4 says nothing about what happens if the defendant—the buyer—prevails on a counterclaim. Id. The defendant argues that reasonable persons could disagree about whether the plaintiff's defense of its counterclaim qualifies as the plaintiff "enforcing its rights under this contract." Id. The defendant says that it would be unreasonable and inequitable for the plaintiff to recover fees and costs when jury found that the plaintiff itself had breached the contract. Id. The defendant argues that Section 10 does not clearly and unambiguously indemnify the plaintiff against the counterclaims. Id. at 5.

The defendant cites Wisconsin case law holding that courts should refuse to enforce an attorney's fee provision that is unreasonable or inequitable. Id. It argues that the plaintiff, who drafted the contract, was the party more sophisticated and experienced in the sale of large commercial binding equipment. Id. at 6. The defendant says that it had purchased only one other machine and that was in 2006. Id The defendant labels the contract "manifestly one-sided" and "unreasonably favorable" to the plaintiff. Id. It asserts that it is undisputed that it had paid 83% of the Machinery Contract and that it objected to paying the final $115,000 "because [the plaintiff] had misrepresented the condition of the subject equipment and had likewise

26

breached the Machinery Contract it was suing on," and it says the jury agreed with the defendant on these issues. Id. The defendant asserts that it would be "wholly inequitable, unjust, unfair, and unreasonable to punish" the defendant by awarding the plaintiff attorneys' fees when (a) the jury found that the plaintiff breached the Machinery Contract, (b) the plaintiff "was not entitled to 43.5% of the remaining balance it was seeking as its claim" and (c) the defendant already had paid 83% of the purchase price of the machine. Id. It says that doing so "would chill parties with legitimate contractual grievances from defending their rights where such one-sided contracts have been extracted by sophisticated sellers." Id. at 6-7.

Conceding that the court has "the inherent power" to determine the reasonableness of attorneys' fees, the defendant asks the court to reduce any fee award to exclude "fees for unnecessary and entirely unsuccessful work, as well as fees lacking sufficient explanation and support to assess." Id. at 7. It also asks the court to "further reduce any award to reflect the share of [the plaintiff's] claim that was unsuccessful due to [the defendant's] successful breach of contract counterclaim." Id. The defendant deems "[m]ost critical[ ]" the plaintiff's request for $28,030.50 for its failed summary judgment motion. Id. The defendant recounts that the plaintiff allowed the summary judgment deadline to pass, then months later asked for a new summary judgment deadline as discovery was about to close and after the parties had participated in mediation. Id. The defendant asserts that the summary judgment motion was "entirely unsuccessful in narrowing the disputed claims" and that the

27

motion delayed trial by two years (with the plaintiff now claiming that it is entitled to interest at 18% per annum during that and the rest of the prejudgment period). Id. It asserts that the motion "significantly increased" its fees by requiring the defendant to defend against the "ill-fated motion." Id. at 7-8.

The defendant also argues that the plaintiff has requested fees for a significant amount of time ($35,017)[2] incurred by "an unidentified timekeeper" identified as "DS" at a billing rate on par with Attorney O'Neill's billing rate, with no explanation of the timekeeper's experience, role or why such person's work would be necessary on a "fairly straightforward commercial dispute." Id. at 8. The defendant says that because the plaintiff did not identify this timekeeper, the court cannot conduct any meaningful review of the reasonableness of that person's work. Id. It says that often "the time descriptions indicate that Attorney O'Neill is working on similar tasks and documents at or around the same time as 'DS,' at best indicating inefficient workflow practices among two senior attorneys." Id.

Finally, the defendant argues if the court decides to award the plaintiff fees, the prorated method in Borchardt is the only reasonable method to apply. Id. The defendant argues that under that approach, "the calculation should be based on the ratio of what [the plaintiff] was awarded on its breach of contract

---

[2] This is the defendant's calculation; the plaintiff did not provide separate time sheets for each timekeeper. The plaintiff broke out the timesheets by task— pretrial work, summary judgment work, trial work and expenses. Dkt. Nos. 114, 114-1 through 114-4.

claim *without* adding prejudgment interest against what the jury ultimately awarded [the defendant] on its successful breach of contract counterclaim." Id. It says that if the court applies Borchardt, "the reduction in this case should be 43.5% ($50,000 ÷ $115,000)." Id. at 9.

The defendant asks the court to reject the plaintiff's suggestion that "the proration be calculated based on the amount awarded to [the defendant] compared to the amount sought by [the defendant] on its counterclaims." Id. It tries to distinguish the contractual language in Shadley from the language in the Machinery Contract in this case, and argues that utilizing the plaintiff's proposed calculations against a counterclaiming defendant would discourage small business defendants from asserting legitimate counterclaims, "especially in situations of one-sided contracts drafted by sophisticated vendors with significantly greater experience with such contracts." Id. at 9-10.

The defendant asks the court to limit costs to the amount in the bill of costs submitted by the plaintiff ($9,250.45, Dkt. No. 111). Id. at 10. The defendant asks that if the court awards additional fees, it reduce those fees by the fees the plaintiff has requested for preparing the failed summary judgment motion ($28,030.50) and the fees attributable to the unnamed "timekeeper" "DS" ($35,017), then further reduce the award by 43.5% to reflect the plaintiff's partial award. The defendant calculates the total amount as $109,155.04. Id.

C.    Plaintiff's Reply (Dkt. No. 121)

In reply, the plaintiff says that the contract unambiguously allows it to recover the fees and costs associated with collecting the unpaid balance

(presumably the $115,000). Dkt. No. 121 at 1. The plaintiff asserts that the defendant recovered on only one of two claims ($50,000, instead of the $733,000 the defendant requested), and maintains that "[t]o the extend [the plaintiff's] fee recovery is reduced at all based upon the $50,000 awarded to [the defendant], it should be in proportion to [the defendant's] success, which was less than 7%." Id.

The plaintiff classifies its win as "major"—$218,500 consisting of the entire $115,000 unpaid invoice plus what the plaintiff asserts is "interest from the date the jury found installation to have occurred (April 2019)[3] through May 2024." Id. at 2. The plaintiff says the jury awarded it 100% of its claim and awarded the defendant less than 10% on its contract claim and nothing on its second claim. Id. at 2-3. The plaintiff also labels the defendant's position as "particularly disingenuous" because, it says, the defendant forced the plaintiff to file suit and incur attorney's fees. Id. at 3. The plaintiff also argues that the defendant's calculations are wrong because under Shadley, the court should compare the amount the jury awarded each party against the amount that party requested, rather than comparing the amount of the unpaid invoice (without prejudgment interest) to the $50,000 the jury awarded the defendant on its breach-of-contract counterclaim. Id. at 4. As for the defendant's argument that it already had paid 83% of the contract amount due, the

_____

[3] As the court has explained, the verdict form does not disclose how the jury calculated the damages it awarded the plaintiff. The verdict form does not disclose the date on which the jury concluded that installation occurred, or even if it reached such a conclusion.

30

plaintiff says that the contract required that amount to be paid before installation; it asserts that "in awarding [the plaintiff] the final $115,000 (plus interest)," the jury "concluded that [the defendant] was in fact required to make the prior payment." Id.

The plaintiff attempts to distinguish Borchart by arguing that Sections 4 and 10 of the Machinery Contract are plain, clear and unambiguous. Id. at 5. It says that Section 4 applies to affirmative claims brought by the plaintiff and that Section 10 applies to the defense of such claims. Id. at 5. The plaintiff says that to the extent that the defendant argues that the contract provisions are inequitable and unreasonable, Mr. Rokitnicki and Ms. Bolen testified regarding the defendant's long history and its experience in entering into contracts. Id. at 6. The plaintiff says there is no evidence that the defendant attempted to negotiate changes to the contract; it says that the defendant knowingly signed the contract. Id.

Finally, the plaintiff argues that the court should not discount its attorneys' fees by the amount billed for the failed summary judgment motion because the plaintiff was within its rights in filing the motion. Id. at 7. The plaintiff states that it would not have had to file the summary judgment motion if the defendant had made the last contract payment in the first place. Id. As for the entries by "DS," whom the defendant refers to as an unknown timekeeper, the plaintiff identifies "DS" as Diane Slomowitz, a partner with a decades-long legal career specializing in legal research in writing who prepared the initial draft of the "legal aspects of the brief" for Attorney O'Neill, a "regular

31

practice" between O'Neill and Slomowitz. Id. The plaintiff asserts that the relationship between O'Neill and Slomowitz promotes efficiency and Slomowitz's fees are reasonable and were incurred in the normal course of business. Id.

The plaintiff concludes by asserting that to the extent that the court believes that "some apportionment of fees is necessary," the court reduce the plaintiff's requested fees by "no more than 7.0%." Id. at 7-8.

D.    Analysis

Section 4 of the Machinery Contract states that "Purchaser [in this case, the defendant] shall be responsible for and shall remit to Seller [in this case, the plaintiff] all costs, expenses and reasonable attorney fees incurred by Seller [the plaintiff] in obtaining payment of any invoice or portion thereof, or in enforcing its rights under this contract." Dkt. No. 1-1 at ¶4. This provision entitles the plaintiff—the "Seller"—to its costs, expenses and fees in recovering the $115,000 final payment. But it does not resolve the question of whether the plaintiff is entitled to recover its costs, expenses and fees incurred in defending against the defendant's counterclaims.

Section 10 is a broad indemnification clause. It reads:

> **Indemnification.** Purchaser shall indemnify Seller against any and all losses, liabilities, damages and expenses (including, without limitation, attorneys' fees and other costs of defending any action) which Seller may incur as a result of any claim by Purchaser or others arising out of or in connection with the Machinery, including as a result of the installation or operation of the Machinery, and defects not proven to have been caused solely by Seller's negligence.

32

Dkt. No. 1-1 at ¶10. Section 10 does not mention counterclaims, although it mentions the cost of "defending any action." But applying its wording to the facts of this case—where the plaintiff Seller prevailed on its breach of contract claim *and* the defendant Purchaser prevailed on its breach of contract counterclaim—arguably relieves the plaintiff Seller of *any* obligation to pay *any* money to the defendant unless the money results from a defect caused solely by the plaintiff's "negligence;" it requires the defendant Purchaser to indemnify the plaintiff Seller for *any* losses, liabilities and damages—including any caused by its own breach of the contract. If that is, in fact, what Section 10 means, it requires the defendant (the *winner* on the counterclaim for breach of contract) to pay the loser (the plaintiff). Such a provision arguably is substantively unconscionable.

The jury found that the plaintiff breached the contract and awarded the defendant damages of $50,000. The jury was not asked to apportion the degree of liability attributable to each party, or to explain what it believed each party had done to breach the contract. But the jury heard extensive testimony about the Vento machine not working or not working as expected. It is hard to imagine how the jury could have found in favor of the defendant on its breach-of-contract counterclaim, and awarded it $50,000 in damages, if it had not credited some of that testimony. For the court to rely on Section 10 of the Machinery Contract to require the *defendant* to pay both the fees it incurred in suing for the $115,000 and the fees it incurred in defending against a successful breach-of-contract counterclaim would result in an unreasonable

33

fee award. "[E]ven contractual provisions for attorney's fees must abide by the concepts of justice and fair play to avoid an unreasonable result." <u>Johnson v. Waterstone Mortg. Corp.</u>, Case No. 19-cv-652, 2020 WL 7695430, at *7 (E.D. Wis. Jan. 7, 2020) (citing <u>GE Properties, LLC, v. Draggoo</u>, 370 Wis. 2d 261 (Wis. Ct. App. 2016)). As the Wisconsin Court of Appeals said in <u>Borchardt</u>,

> Although authority to the contrary exists, the general rule is that where reasonable attorney's fees or some designated percentage is provided for in the note, and the plaintiff recovers on the note and the defendant recovers on the counterclaim, the amount recoverable for attorney's fees is reduced in proportion to the amount recovered on the note less the amount recovered on the counterclaim. *Pioneer Constructors v. Symes*, 77 Ariz. 707, 267 P.2d 740, 744 (1954).

> We conclude that this is the better reasoned rule where the agreement between the parties on attorney's fees recovery is ambiguous. To hold otherwise would obligate a party who, in whole or in part, has successfully prosecuted a claim against another to pay the latter's attorney's fees; in short, the winner pays the loser. This is contrary to the fundamental concepts of justice and fair play. Moreover, to hold otherwise suggests that the parties intended such a role reversal—a result which we conclude borders on the unreasonable. In interpreting an ambiguous contract provision, we must reject a construction resulting in unfair or unreasonable results. *Wausau Joint Venture v. Redevelopment Auth.*, 118 Wis. 2d 50, 58 . . . (Ct. App. 1984).

<u>Borchardt</u>, 156 Wis. 2d at 428.

Because the court concludes that awarding the plaintiff all the fees and costs it demands would result in an unreasonable fee award, it must determine how to adjust that award. The plaintiff did not attempt to allocate its fees to the prosecution or defense of its breach of contract claim. According to the plaintiff, "there is no meaningful way to break down the fees incurred by [the plaintiff] on a claim-by-claim basis. Dkt. No. 113 at 2. Instead, the plaintiff proposes alternate ways the court could adjust the award. Although the

plaintiff attempts to frame its win as "major" and the defendant's success as "less than 7%" of its total request," the jury found that *both* parties breached the contract and awarded damages to *both* parties. The plaintiff recovered a net award of $65,000, but the court has ordered that it is entitled to post-judgment interest on the unpaid $115,000 from the date of the verdict because the contract states that "invoices" bear interest, and the "invoice" the defendant did not pay was in the amount of $115,000.

The court agrees that it should discount the plaintiff's attorneys' fee award. It will follow <u>Borchardt</u> and will reduce the fee award "in proportion to the amount recovered on the note [the amount the jury awarded the plaintiff ($115,000)[4]] less the amount recovered on the counterclaim [the amount the jury awarded the defendant on its counterclaim ($50,000)]." <u>Borchardt</u>, 156 Wis. 2d at 428. This means the plaintiff may recover 56% of its total costs and fees ($65,000 ÷ $115,000). The plaintiff has filed a declaration asserting that it accrued $166,188.50 in pretrial fees, $28,030.50 in fees for its summary judgment motion, $46,098 in trial fees and $15,925.26 in expenses, for a total of $256,242.26. Dkt. No. 114. The court will reduce that requested amount by 56%, for a total award of $143,495.66 in attorneys' fees and costs. It does not appear that the clerk has taxed costs as the plaintiff requested (Dkt. No. 111), so the court will not further reduce the costs but will instruct the clerk not to

---

[4] The plaintiff proposes the court start with the $218,500, which includes the $103,500 amount that the parties believed the jury intended as prejudgment interest. The court has held that the jury did not have the authority to award prejudgment interest and that no prejudgment interest is warranted.

enter a separate award of costs. The fees otherwise appear reasonable and owed under the contract.

## III.    Conclusion

The court **GRANTS** the defendant's motion to alter judgment or for relief from judgment. Dkt. No. 117.

The court **FINDS** that the question of whether the plaintiff was entitled to prejudgment interest was a matter of law for the court to decide and that it was a manifest error of law for the plaintiff to ask the jury to decide it (and, if the jury did decide it, it was wrong for it to do so) and the court **VACATES** any jury award to the plaintiff in excess of $115,000.

The court **ORDERS** that post-judgment interest is awarded to the plaintiff on the $115,000 unpaid invoice at the statutory simple interest rate of 5% percent per year from June 7, 2024 (the date of the jury's verdict).

The court **GRANTS IN PART** the plaintiff's motion for attorney fees and costs and **ORDERS** that the plaintiff is awarded $143,495.66 in fees and costs. Dkt. No. 113. The clerk will amend the judgment accordingly.

The court **DIRECTS** that the Clerk of Court must not to enter a separate award of costs as requested in Dkt. No. 111.

Dated in Milwaukee, Wisconsin this 20th day of March, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

36